Colvin's Baking Company, Respondent, vs. Northwestern National Insurance Company, Appellant.

*May 7—June 5, 1934.*

The cause was submitted for the appellant on the brief of *Jeffris, Mouat, Oestreich, Wood & Cunningham* of Janesville, and for the respondent on that of *Nolan, Dougherty, Grubb & Ryan* of Janesville.

Fritz, J.    The ultimate issue on this appeal is whether the insurance coverage under a policy dated August 8, 1929, and issued by defendant to plaintiff, extended to a certain

Chevrolet truck, which plaintiff acquired in exchange for a Reo truck on April 26, 1930, and which was damaged in a collision on June 2, 1930. The policy (so far as here material) provided that the insurer "does insure the assured . . . against direct loss or damage arising . . . in respect to the automobile(s) described . . . as set forth in the schedule," which was embodied in the policy. In that schedule eleven automobiles, including the Reo truck, were described so as to definitely identify them, but the Chevrolet truck was not described or included therein. However, the court found that before that truck was damaged, the plaintiff had notified the defendant's agent, Lathrop, who had written the policy, of plaintiff's acquisition of that truck in exchange for the Reo truck, which was described in the schedule; and that Lathrop had indorsed the change by a rider on the policy prior to the revocation of his authority as an agent of the defendant. The court also found that Lathrop had represented to and agreed with plaintiff that the policy would automatically cover any automobile acquired by plaintiff in place of one described and covered by the policy; and the court concluded that by reason of that representation and agreement, and the course of dealing between the parties preceding the loss, the defendant is estopped to deny that the policy was in fact a fleet policy, that the custom and practice was that notice of the acquisition of an automobile in exchange of a scheduled automobile was to be given, and indorsement was to be made by the agent, within a reasonable time, and that the coverage was automatically extended immediately upon such acquisition of an automobile.

Those findings and conclusions are challenged on this appeal. Virtually the only material evidence in support of the finding that notice of the exchange was given by plaintiff before the Chevrolet truck was damaged on June 2, 1930, was testimony by Clarence R. Steinhelper, plaintiff's bookkeeper, and by Olive G. Wyse, Lathrop's sister, who was

employed in his office, to the following effect: Clarence R. Steinhelper testified that, although he cannot remember that he telephoned to Lathrop's office before the accident, in relation to the exchange of the Chevrolet for the Reo truck, he would say that he did so because that is the usual procedure, and he always had advised Lathrop when plaintiff had a new truck. However, he could recall no other exchange of trucks, excepting one in June, 1928, and another in March, 1929. Similarly weak in probative value was the testimony by Mrs. Wyse, that she had overheard an office girl, who was working under her supervision, mention, while engaged in conversation over the telephone, the name of plaintiff's bookkeeper, and ask about the purchase, the type, and the serial number of an automobile, and also say, "when you get them, please remember to give them to us;" and she also testified that the girl was writing. However, that writing was not offered in evidence and the girl, who appears to have removed from the state, was not examined as a witness. Mrs. Wyse further testified that she had also made a memorandum, which had been preserved and kept with plaintiff's policy until it was replaced by an indorsement which was made of the transfer.

On the other hand, the evidence establishes that no such indorsement was received by the defendant from Lathrop until July 13, 1930; and that no written notice as to any such transfer was given to either Lathrop or the defendant, excepting the following statements in a letter written by plaintiff's bookkeeper to Lathrop on June 11, 1930, to wit:

"Attached kindly find corrected list of our trucks to date. You will note that we traded truck Reo one and one-half ton 10709 for Chevrolet—motor 168074—serial 21LR6480— and failed to report this change to you.

"Our new Chevrolet met with an accident Monday, June 2, 1930, and I am asking you to kindly take care of this claim. *I was at fault in not reporting this change before,* but I know you will overlook *my error* this time."

Lathrop forwarded that letter to defendant on June 13, 1930, with a letter in which he said in reference to plaintiff's claim:

"The other day these people reported a claim to me involving collision insurance to some two or three hundred dollars extent. The car involved was a new Chevrolet truck and *after they reported* the claim to me *I discovered there was no coverage on this truck.* In tracing this down I find that through the exchange of owners on this risk in their own office *they were not clear as to who was to report the change* of cars, etc. Anyway, the car that had the claim was an exchange for one of the old cars covered in the old policy which we do have covered and, of course, would have paid any claims on."

The statements in those letters, which are italicized above, constitute admissions on the part of plaintiff's bookkeeper, and corroboration thereof by Lathrop, which unequivocally and convincingly establish that no notice was given by plaintiff that it had acquired the Chevrolet truck until at least nine days after the truck was damaged on June 2, 1930. In view of that proof, and other corroborating facts and circumstances, the trial court's finding that plaintiff had given such notice before the loss had occurred is so contrary to the clear preponderance of the evidence that it cannot stand. As plaintiff's bookkeeper frankly stated in his letter of June 11, 1930, he failed until on that date to report that exchange of trucks to Lathrop and the defendant, and he was at fault in not reporting that change before then. Likewise, as Lathrop stated in his letter, it was not until after plaintiff had reported the claim to him that he discovered that there was no coverage on the Chevrolet truck, which had been damaged.

Is the defendant estopped by reason of oral representations and promises, alleged to have been made by Lathrop, to deny that the policy in suit was a fleet policy, and that the

coverage thereunder automatically extended, immediately, upon the exchange of trucks, to the Chevrolet truck, although it was not within the expressed terms of the policy and schedule? There is proof that defendant also issued in its business another form of a policy which had certain indorsements that did automatically extend the coverage afforded thereby to all cars acquired by an insured during the term of the policy; that Lathrop had been informed by defendant that it wrote that type of policy; and that it would have been within his authority to issue that type of policy with an indorsement to that effect. However, it does not appear that Lathrop knew that there had to be such an indorsement on such a policy, in order to have it have that effect, and it is manifest that he neither intended to issue a policy with such an indorsement to plaintiff, nor to charge plaintiff the premium prescribed for that type of policy and coverage. It was not his intention to issue a policy to plaintiff otherwise than in the form which he in fact used, and he knew that, in order to extend the coverage thereunder to an automobile subsequently acquired, there had to be issued a rider to the existing policy, upon his being notified by the plaintiff of an exchange.

As the policy, including the schedule therein, issued by Lathrop, is not ambiguous, its legal meaning and effect, as written, must control and cannot be altered by reason of any oral, but erroneous, representation or agreement made by Lathrop as to the scope of the coverage afforded by the policy. To hold that the defendant has become estopped, by reason of Lathrop's oral representations or agreement, to assert the true meaning thereof would allow Lathrop to modify by mere oral statements, material and important terms of defendant's contracts of insurance. As he had nothing to do with prescribing the provisions of those contracts, the power to thus modify the terms thereof was

foreign to all intents and purposes of his agency. In this case as in *Cullen v. Travelers Ins. Co.* 214 Wis. 467, 253 N. W. 382, 384,—

"in the absence of such power on his part, no modification of that contract, under the theory of estoppel or otherwise, can be predicated upon Lathrop's mere oral statements that the meaning of the contract is otherwise than the plain, legal meaning of its unambiguous provisions."

As the coverage had never been effectively extended to the automobile in question, before it became damaged, plaintiff is not entitled to recover in this action.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.