## SECURITY NAT. FIRE INS. CO., GALVESTON, TEX., v. WEGNER.

No. 34856. Nov. 12, 1952.

Rehearing Denied Dec. 9, 1952.

*251 P. 2d 795.*

Tolbert & Gillespie, Hobart, for plaintiff in error.

Carder & Carder, Hobart, for defendant in error.

JOHNSON, J. This is an action by Willard G. Wegner against Security National Fire Insurance Company, Galveston, Texas, a foreign insurance corporation, to recover damages caused by hail to his wheat crop under an alleged hail insurance contract with defendant.

Plaintiff in his petition pleads two separate causes of action. His first cause of action is based on contract. The second cause of action is based upon negligence of defendant because of its failure to notify him of rejection of his application for hail insurance within a reasonable time after the application was accepted and approved. The material facts necessary to a decision in this case are undisputed. They are: On the 16th day of May, 1949, plaintiff, who was then temporarily residing at Norman, Oklahoma, called by long distance telephone the local insurance agency at Lone Wolf, Oklahoma. M. M. Davis was the head of the agency. He was then absent from the office inspecting hail losses. In his absence Ida Koeblen, an employee who was in charge of the local office in the absence of Mr. Davis, answered the telephone. In that conversation, plaintiff requested hail insurance on certain acreage of wheat located in Kiowa county. He requested that the insurance become effective immediately; that liability attach as of the date of the conversation. Miss Koeblen informed him that the matter could not be handled in that manner; that it must be handled in the same way that previous applications made by plaintiff were handled.

It appears that on the 10th day of May, 1949, plaintiff wrote a letter to Mr. Davis, local agent at Lone Wolf, relative to obtaining insurance on some other wheat in that vicinity. On May 11th, Mr. Davis, local agent, replied thereto and in the letter, among other things, stated:

"I presume we will have to date the application immediately upon inception from the Postoffice, its about the only way and keep from any mis-understandings. If the wheat should hail out before it takes effect, we will return the note and cancel the insurance flat."

It is agreed by all parties that the insurance application in this case should be handled in the same manner and that the application should become effective on the date it was received and signed at the local office after having been signed by plaintiff.

On May 16, 1949, Miss Koeblen prepared an application together with a premium note in the sum of $179.20 which plaintiff was to execute for the premium and mailed same to him at Norman, Oklahoma. Plaintiff received the application and note on the 17th day of May and on the same day signed the application and note and mailed it to Mr. Davis at his office at Lone Wolf, Oklahoma. The application and premium note were not received at the local office until May 20th at 8:30 in the morning, at which time the application was signed and accepted by Mr. Davis, the local agent. In the meantime, and on May 17th, the crop was hailed upon resulting in a ten per cent loss to the crop. On the 18th day of May plaintiff again called Miss Koeblen from Norman over long distance telephone and talked to her relative to some other insurance. He was at that time advised by Miss Koeblen that the crop upon which he sought insurance had been hailed upon on May 17th and that insurance could not be written on hailed wheat. The crop was again hailed upon on May 31, and June 3, 1949. Plaintiff in his application for hail insurance applies for hail insurance on certain acreage of wheat in an amount not to exceed $2,240. As to coverage the application provides:

"* * * for direct loss and damage by hail only to the crops described beginning twenty-four (24) hours from the date and hour of the actual signing of this application by me and the Agent of this Company and to continue for not exceeding two hundred forty (240) hours thereafter, during which time this Company will either complete the contract by the issuance of a policy or reject the application. When rejected by telegram or registered mail to the address given above all liability hereunder will immediately terminate when such rejection reached the postoffice or telegraph office at the above address, and unless rejected this insurance will continue for the term provided herein under the following conditions and subject to the Stipulations and Conditions printed on the back hereof. It being agreed that if any crop described herein is hailed upon during the twenty-four hour period *after* signing this application such crop immediately become uninsurable under this application and no insurance whatsoever shall attach on such crop and within forty-eight (48) hours after the occurrence of said hail, I will notify the Company and will return the policy without claim (if the policy has been issued) and the premium for the insurance on such crop will be refunded to me, and my failure to so notify the company will forfeit my right to refund of said premium."

At the conclusion of the evidence both parties moved for a directed verdict. The trial court directed a verdict in favor of defendant on plaintiff's first cause of action and directed a verdict in favor of plaintiff on his second cause of action. Defendant appeals and asserts that it was entitled to a directed verdict on both causes of action. Its defense is based first on the theory that under the terms of the application the crop became uninsurable because it was hailed upon on the 17th day of May and prior to the time the application was received at the local office. We do not agree. The application does not so provide. It provides that if any

crop described herein is hailed upon during the 24-hour period after signing this application, such crop immediately becomes uninsurable under this application and no insurance whatever shall attach on such crop. Under the provisions of the application the signing of the application means signing by both plaintiff and the local agent at the local office. The application was not signed at the local office by the local agent until the 20th day of May, 1949, or three days after it was hailed upon, and the crop was not hailed upon within 24 hours after the application was signed by both parties, it was not hailed upon until about ten days thereafter. This provision of the policy is therefore not available to the defendant as a defense.

Defendant further refers to the testimony of Miss Koeblen and the letter written by Mr. Davis on the 11th day of May, 1949, and also relies upon this testimony and letter as a defense. It is asserted that plaintiff was advised orally by Miss Koeblen and also by the letter written by Mr. Davis on the 11th day of May that if the crop was hailed upon before the application was received the insurance would be canceled flat and the premium note returned. A sufficient answer to this contention is that defendant did not act on the statement contained in the letter or upon the statement made by Miss Koeblen. It did not upon receipt of the application and premium note at the local office cancel the insurance flat and return the note to plaintiff, but acted to the contrary. The evidence shows that immediately after the hail occurred on May 17th, the local agent got in touch with the general agent, the general agent came to Lone Wolf, Oklahoma, on the 19th day of May, consulted with the local agent, and examined the wheat crop hailed upon. Thereafter, and on the 20th day of May after consultation with the general agent and with full knowledge on the part of both the general and local agent that the wheat crop had been previously hailed upon, the local agent signed and accepted the application and premium note and still retains the note and by such act and conduct then and there entered into an interim hail insurance contract with plaintiff, under the terms of which liability attached 24 hours after the date on which it was signed and accepted by the local agent and liability continued until the application was rejected by defendant and notice thereof given to plaintiff in the manner provided by the application.

It is conceded by defendant that it did not give plaintiff notice of rejection of his application nor did it return to him his premium note, but it retained and still had possession of the note at the time the suit was filed.

It is defendant's contention that it was not required to give plaintiff notice of the rejection of the policy for the reason that the crop was rendered uninsurable because it had previously been hailed upon. We have heretofore disposed of this question. No other excuse is given for its failure to give such notice nor does it in any manner attempt to explain its retention of the premium note.

It is clear from defendant's own testimony that it was guilty of negligence in failing to notify plaintiff within a reasonable time after the application was signed and accepted by its local agent of the rejection of the application, and plaintiff is therefore entitled to recover all damages sustained by him occurring subsequent to May 17, 1949, because of defendant's negligence in this respect. St. Paul Fire & Marine Ins. Co. v. Creach, 199 Okla. 372, 186 P. 2d 641.

Defendant further contends that the question as to whether or not it was guilty of negligence in failing to notify plaintiff of the rejection of his application constitutes a question of fact for the determination of the jury and the trial court therefore erred in directing a verdict in favor of plaintiff. This contention would be correct if defendant had offered any evidence upon

which the jury could have found that it was not guilty of negligence in failure so to notify plaintiff. However, as above pointed out, defendant by its own evidence clearly establishes that it was guilty of negligence in this respect. There was, therefore, no issue of fact to be submitted to the jury.

There is no complaint or objection raised as to the amount of damages allowed by the jury, but it is in effect conceded that the amount allowed is correct in the event defendant be held liable. The trial court ruled correctly in directing a verdict in favor of plaintiff on his second cause of action.

Judgment affirmed.

HALLEY, V.C.J., and CORN, GIBSON, O'NEAL, and BINGAMAN, JJ., concur.