UNITED STATES FIRE INSURANCE CO., Appellant,

v.

Dale CANNON, d/b/a C & C Well Service, Appellee.

No. 17893.

United States Court of Appeals Eighth Circuit.

Aug. 13, 1965.

Benjamin M. Wall of Haney, Walsh & Wall, Omaha, Neb., made argument for appellant and filed brief.

George P. Burke of Van Steenberg, Myers & Burke, Kimball, Neb., made argument for appellee and filed brief.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This declaratory judgment action was instituted by the plaintiff, United States Fire Insurance Co. (United States Fire), against defendant, Dale Cannon, to secure an adjudication that plaintiff had no insurance liability or coverage with respect to damages arising out of an accident involving a vehicle owned by Cannon which occurred on June 13, 1962. Defendant Cannon by answer denied plaintiff's allegations and by counterclaim asserted plaintiff was responsible for damages he suffered by reason of liability he incurred

resulting from such accident. Diversity of citizenship and jurisdictional amount are established.

After trial to the court, the court filed its findings of fact and conclusions of law in the form of a memorandum opinion (not reported). Judgment was entered denying plaintiff relief and adjudicating upon defendant's counterclaim that plaintiff is liable on the theory of negligent delay to Cannon for insurance coverage provided in its standard policy for comprehensive general automobile liability insurance for the consequences of the June 13, 1962, accident. After motion for new trial was made and denied, plaintiff took this timely appeal.

Cannon, a resident of Kimball, Nebraska, is a contractor engaged in oil field activities. In connection therewith, he operates a number of motor vehicles. Liability insurance on his vehicles was carried by United States Fidelity & Guaranty Company for some time. About a month before Cannon's annual policy was to expire on June 7, 1962, United States Fidelity & Guaranty gave notice it did not intend to renew the policy.

Eastman, an independent insurance agent at Kimball, Nebraska, who represents United States Fidelity & Guaranty, United States Fire and other insurance carriers, handled all of Cannon's insurance needs in 1962 and for some ten years prior thereto. Cannon left it to Eastman to choose the insurance carrier for his policy. When Eastman was billed for the premium, he would bill Cannon and would receive payment.

Eastman was a survey agent of United States Fire. He had a written contract with the company. He wrote a considerable volume of home and hail insurance and with respect to such policies, he had authority to bind the risk. Jones as the agent for United States Fire had on a number of occasions urged Eastman to give the company casualty business. There is a dispute as to whether the agency contract covers casualty business and as to whether Eastman had been set up as a casualty agent. Such issue was not resolved by the trial court and need

not be determined here as it has no decisive bearing on Cannon's negligent delay cause of action.

Sometime in May, 1962, Eastman advised state agent Jones of United States Fire that he would like to place Cannon's automobile liability insurance with the company. He advised that United States Fidelity & Guaranty would not renew its coverage and disclosed all material facts. Jones said to him, "Bundle it up and give me a breakdown of the losses and send it in to me." Eastman then secured Cannon's application for the same coverage as he had been provided by United States Fidelity & Guaranty and mailed the application to Jones on June 5 with an accompanying letter which set forth a breakdown on Cannon's losses. Eastman at that time advised Cannon that he was covered by the insurance. The application was received in the state office on June 6. The application discloses that the policy is to be effective June 7. Jones was absent from the state office and did not see the application until June 9, when he casually looked through his mail. On Monday, June 11, he examined the application more fully. Jones testified that he observed the expiration date of the prior policy as set out in the application and the requested effective date of June 7 and the request in the accompanying letter for forms of certificates of issuance of policy to furnish parties with whom Cannon had contracts. Jones testified:

"I saw on the application that the prior policy was shown and showed when it expired. I also read the part of Eastman's letter that he needed the certificates immediately plus the policy insurance. I also noticed the date that he requested the policy to be effective. This meant to me that I had better take some action and pronto so that Nate Eastman wouldn't be sitting out on a limb thinking that he had coverage when he did not have, and had no authority to, we had no authority to assume any coverage like that. I felt that Mr. Eastman felt that he had bound this insurance with us."

On June 11, Jones sent Eastman a telegram to the effect that the risk was not bound and that it must be submitted to the home office for approval. Eastman received the telegram on June 12. He talked to Jones and at Jones' suggestion called the district office but was unable to get United States Fire to accept or bind the risk. He then called the Denver agents of Lloyd's of London, who said that they could take the risk but suggested Hartford. Hartford's general agent at Denver advised the company would take the risk but directed Eastman to make application through its local agent. The local agent could not be located that day but insurance with Hartford was subsequently obtained, effective June 14.

Cannon received no notice in any manner from United States Fire, Eastman or any source prior to the accident on June 13 that United States Fire did not take or bind the risk.

Prior to the suit, Cannon's attorneys wrote United States Fire demanding insurance coverage and tendering the premium. No issue is raised with respect to nonpayment of premium. It is undisputed that Cannon had a credit arrangement with Eastman under which he paid insurance premiums as he was billed therefor. The company denied liability and brought this declaratory judgment action.

The trial court's judgment is based upon negligent delay on the part of the plaintiff in acting upon defendant's application for insurance and in failing to inform the defendant within a reasonable time of its refusal to bind or accept the application. With respect to the applicable Nebraska law, the court states:

> "The Nebraska courts have also long recognized a right of action 'for negligence in failing to act promptly on an application for insurance' and have concluded that such a remedy 'seems to be founded on reason and justice.' Such recovery is available for the 'fraud or other wrongful acts of [the insurer's] agent within the scope of his actual or apparent authority, such as failing or unrea-

sonably delaying to send the application to the company.' The company is also liable for damages for its failure to promptly and reasonably perform the duty which the ultimate facts, in view of the nature of the business of the insurance companies, imposed upon them. Rhoads v. Columbia Fire Underwriters Agency, 128 Neb. 710, [260 N.W. 174] Wilken v. Capital Fire Ins. Co., 99 Neb. 828, [157 N.W. 1021] Strand v. Bankers Life Ins. Co., 115 Neb. 357 [213 N.W. 349].

> "In Rhoads, supra, the Nebraska court further recognized the right to sue in tort even though the agent apparently responsible for the negligent acts was but a soliciting agent, such as U. S. Fire contends was Eastman's position with respect to selling the insurance involved herein."

The Nebraska cases cited by the trial court strongly support its view that Nebraska recognizes a tort action for damages for negligent delay in acting upon an application for insurance. Plaintiff has pointed to no contrary Nebraska holdings. Instead, plaintiff stresses that under the evidence the agent had no express or implied authority to bind the risk and that an application for insurance without acceptance creates no binding contract. In reply to a similar contention made in Rhoads v. Columbia Fire Underwriters' Agency, 128 Neb. 710, 260 N.W. 174, 179–180, the Nebraska court states:

> "We do not take issue with the contention of defendants that the allegations of the petition, properly considered, and the proof in support thereof, under the long-established rule in Nebraska, do not establish the existence of a contract between the insurance company and plaintiff. * * * But we are also of the opinion that, in consideration of the ultimate facts pleaded, and the evidence in the record sustaining plaintiff's action, this proceeding is not based on a strictly contractual liability, but

is a 'tort action,' as that term is commonly employed. * * *

* * * * * *

"In the instant case the 'ultimate facts' do not constitute a claim for insurance, but invoke a remedy for damages for failure of the insurance companies to promptly and seasonably perform the duty which these facts, in view of the nature of the business of the companies, imposed upon them. Under the principles announced in Strand v. Bankers' Life Ins. Co., supra, on the record in the instant case, plaintiff was entitled to relief, the extent of which, under the evidence, was a proper question for the determination of the trial jury."

The trial court noted that the Nebraska negligent delay cases did not specifically deal with delay in notifying an applicant of the rejection of his application. The court comments:

"The Nebraska cases recognizing the right of action discussed above do not deal with a situation such as we have here where the insurance company contends that it did not intend to take the risk, and such notice was not conveyed to the applicant. However, the court finds no difference in the negligence of a company failing to issue a policy within a reasonable time and in failing to notify an applicant of the rejection of his application within a reasonable time under the circumstances as such results in liability upon the insurance company for causing damage to the applicant. The court thus follows the language of the Supreme Court of Oklahoma in Security Nat. Fire Ins. Co. v. Wagner, 251 U.[P.] 2d 795, 207 Okla. 526, as follows:

" 'It is clear from defendant's own testimony that it was guilty of negligence in failing to notify plaintiff within a reasonable time after the application was signed and accepted by its local agent of the rejection of the application and plaintiff is therefore entitled to recover all damages sustained by him occurring subsequent to May 17, 1949, because of defendant's negligence in this respect. St. Paul Fire & Marine Ins. Co. v. Cronch, [Creack] 199 Okl. 372, 186 P.2d 641.' "

■ This interpretation is in accord with the general rule that notice of rejection must be given to the insured within a reasonable time. See, e. g., Milbank Mut. Ins. Co. v. Schmidt, 8 Cir., 304 F.2d 640, 643; Coffey v. Polimeni, 9 Cir., 188 F.2d 539, 543, 13 Alaska 242, Werthman v. Catholic Order of Foresters, Iowa, 133 N.W.2d 104, 107; 12 Appleman, Insurance Law & Practice, § 7226 p. 327; 44 C.J.S. Insurance § 165 p. 854. In Coffey v. Polimeni, supra, 188 F.2d at 543, the court states:

"The thought they stand for is that the agent or company owes the applicant for insurance what amounts to a legal obligation to act with reasonable promptness on his application, either by providing the desired coverage or by notifying the applicant of the rejection of the risk so that he may not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere. Implicit in the cases is a recognition that these transactions are fundamentally unlike ordinary commercial or business dealings where mere profit is at stake, so prone is the failure of insurance protection to result in irretrievable disaster to the individual. Those engaged in the insurance business understand perfectly the peculiar urgency of the need for prompt attention in these matters."

■ We believe that the trial court's interpretation of the applicable Nebraska law as set out in the foregoing excerpts from its opinion to be correct. In any event, plaintiff has failed to show the trial court did not reach a permissible conclusion upon the basis of Nebraska law with respect to a cause of action

against an insurance company based upon negligent delay. See Homolla v. Gluck, 8 Cir., 248 F.2d 731, 734.

The court's findings include the following:

"The court finds that the failure of U. S. Fire to act upon the application of defendant until June 11 taken with the failure of either Jones or Eastman to notify defendant of the refusal of U. S. Fire to bind the coverage was negligence. It further is the finding of the court that any loss defendant may sustain as a result of the accident of June 13 is the proximate result of the above negligence of plaintiff. The court therefore holds that plaintiff is liable to the defendant for insurance coverage for the accident of June 13, 1962, to the limits contained within the application, Exhibit 3, less the amount of the premium due on the policy."

■ Our examination of the evidence, much of which has heretofore been set out, convinces us that the court's findings are based upon substantial evidence and are not clearly erroneous. Eastman, believing upon his submission of the risk to Jones, that he had authority to bind the risk, advised Cannon that the coverage would be effective on June 7, the date of the expiration of the United States Fidelity & Guaranty policy. Jones, the state manager, clearly indicates by his testimony that he knew that Eastman and Cannon believed the risk to be bound. Under such circumstances, the court was justified in finding as a fact that the company's delay in acting upon the application received on June 6 until June 11, when the telegram was sent to Eastman, was actionable negligence. Moreover, the notice given Eastman on June 11, received on June 12, was not notice to Cannon. Cannon received no notice of the declination of United States Fire to bind or insure the risk until after the accident causing the loss occurred on June 13.

United States Fire urges that Bridges v. St. Paul Fire & Marine Ins. Co., 102 Neb. 316, 167 N.W. 64, L.R.A.1918D, 1199, is conclusive in support of its position that Eastman is the agent of the insured in this transaction. Bridges is readily distinguishable. There the agent who was authorized by the insured to select the insurer had made no selection prior to the loss. In our present case, the evidence is clear that Eastman had selected United States Fire as the insurer, as evidenced by the forwarding of the application to such company.

■■ Moreover, § 44–329 R.R.S. Nebraska 1943 provides:

"Every agent or broker who shall solicit an application for insurance of any kind shall, in any controversy between the insured or his beneficiary and the company issuing any policy upon such application, be regarded as representing the company and not the insured."

The statute applies to agents who are taking applications for insurance. In Robinson v. Union Automobile Ins Co., 112 Neb. 32, 198 N.W. 166, the Nebraska court found that an agent who took an application for insurance was an agent for the company under Section 44–329. The interpretation that one is an agent for the carrier alone although he has authority to procure the insured's coverage is in accord with the general rule that this was not a principal-agent relationship but one between a businessman and his customer. See General Accident Fire & Life Assur. Corp. v. Browne, 7 Cir., 217 F.2d 418; 16 Appleman, Insurance Law & Practice § 8736 p. 182.

Other issues raised by United States Fire have not been considered as they have no material bearing upon United States Fire's tort liability for negligent delay.

The judgment appealed from is affirmed.